**Opinion filed December 18, 2014**



In The

# Eleventh Court of Appeals

—————

## No. 11-14-00174-CV

—————

## IN THE INTEREST OF M.C.C. AND S.E.C., CHILDREN

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C45365**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the parents of M.C.C. and S.E.C. The children's mother filed a notice of appeal.[1] We affirm.

In three issues on appeal, the mother challenges the legal and factual sufficiency of the evidence to support the termination of her rights. The standards of review with respect to these issues are well settled. The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a

_____
[1]The children's father voluntarily relinquished his parental rights and did not file an appeal.

parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

In this case, the trial court found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the children and that the mother had committed three of the acts listed in Section 161.001(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that the mother had knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, and had failed to comply with the necessary provisions of a court order. *See id.* § 161.001(1)(D), (E), (O). The mother challenges the sufficiency of the evidence as to subsections (D) and (E) and as to the best interest finding. Because we hold that the evidence is sufficient to support the trial court's findings under Section 161.001(1)(E) and (O), we do not address the mother's first issue relating to Section 161.001(1)(D). *See* TEX. R. APP. P. 47.1.

In her second issue, the mother challenges the legal and factual sufficiency of the evidence to support the finding that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the

children's physical or emotional well-being. *See* FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

The record shows that M.C.C. was born in 2002 and that S.E.C. was born in 2003. The Department of Family and Protective Services originally became involved with the mother and her children in 2004 when the children were young. The removal relevant to the present case occurred in May 2013 after the mother was arrested. The investigator testified that, at the time of the 2013 removal, M.C.C. had missed forty-one days of school and S.E.C. had missed twenty-seven. The Department's investigator testified that there were reports of drug use and lots of "traffic" in and out of the mother's residence. The investigator went to the jail to talk with the mother. The mother was fidgety and incoherent, and she tested positive for methamphetamine and amphetamine. When the investigator asked about the children, the mother said that "the black market must have taken" them. The mother also said that "the jail must have poisoned" her because she had not used methamphetamine for nine years. The mother had "a very long drug history," and most of her history with the Department was related to "drug use." The mother later admitted that she had used methamphetamine during the three months prior to her May 2013 arrest. Sometime after being released from jail, the mother

3

went to a scheduled visitation with the children. The investigator observed that the mother was incoherent during that visitation and that the children pulled away from the mother. The mother tested positive for methamphetamine that day.

A licensed professional counselor worked with the children during this case. The counselor testified that both children had behavioral issues that were probably caused by their environment while in the mother's care, including the mother's drug use and neglect. The children reported that they were left for periods of time without any supervision, that the mother was very volatile and had lots of mood swings, that she had angry fits in which she yelled and threw things, and that there were times when the mother was seemingly under the influence of something and was incapacitated. When the children began counseling, they exhibited the following: anxiety, anger, shutdown behavior, defiant behavior, and mood swings. M.C.C.'s diagnosis included depression, and S.E.C.'s diagnosis included ADHD.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother engaged in conduct that endangered the children's physical or emotional well-being. *See* FAM. § 161.001(1)(E). The mother's second issue is overruled.

Moreover, on appeal, the mother fails to challenge the trial court's finding that the mother failed to comply with the provisions of a court order establishing the actions necessary for her to obtain the return of her children. *See id.* § 161.001(1)(O).[2] The unchallenged finding under subsection (O) is sufficient to support termination of the mother's parental rights as long as termination was shown to be in the children's best interest. *See id.* § 161.001.

---

[2]We note that the record supports the finding under subsection (O) because, although the mother had completed most of the required services, she had not yet obtained stable housing as required by the trial court's order and the family service plan. We note also that the statute does not "make a provision for excuses" for the parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)).

In her third issue, the mother challenges the best interest finding. She argues that the evidence is legally and factually insufficient to support the trial court's finding as to best interest. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

At the time of the final hearing, the termination proceeding had been pending for about one year, and during that time period, the children's behaviors had significantly improved. The children were placed with the same foster parents with whom they had been placed during a previous removal. The children loved the foster parents and were very bonded with them. The foster parents offered a stable home, a consistent environment, and appropriate parenting. In contrast, the mother had no stable housing, had a long history of drug use, had a history with the Department, had demonstrated that she was unable or unwilling to provide an appropriate environment for her children, and had returned to methamphetamine use despite having previously been through the services offered by the Department.

The Department's goal for the children was termination of the parents' rights and adoption by the foster parents with whom the children had been placed. The children's counselor and the Department's conservatorship caseworker both testified that termination of the mother's rights and adoption by the foster parents would be in the best interest of the children. The children's guardian ad litem also recommended that the mother's parental rights be terminated and that the trial court consider adoption by the foster parents. The guardian ad litem noted that the mother had been through services before but that she was still unable to provide for the children. She also noted on the record that, during the previous removal, the children's mental and physical well-being had improved but that they "extremely regressed" after being returned to the mother.

The conservatorship caseworker testified that the children were not bonded with the mother. She also testified that, although the children love their biological parents and would like to have some contact with them in the future, the children wished to remain with the current foster parents and be adopted by them. The counselor testified that M.C.C. ideally would like for the mother and father to get back together, for the children to move back in with them, and for "everybody [to] live in a happy home." S.E.C. ideally would like to go live with his father, whom he sees as a "play buddy." According to the counselor, the children recognized that their idealistic desires were not realistic possibilities, and each of the children expressed, as their second choice, a desire to remain with their current foster parents and be adopted by them. The counselor testified that the children loved their foster parents but that they wanted to continue to have some type of contact with their biological parents.

The mother did not want her parental rights to be terminated. She testified that she had worked hard to complete the required services and that she was now equipped to be a better parent. She also testified that, while this case was pending,

6

she was diagnosed "as bipolar" and that she was currently taking medications for that condition. According to the mother, the medications were working well. The mother also testified that she was on a waiting list for an apartment and had been promised "a two-week wait" about one week prior to trial.

Based on the evidence presented at trial with respect to the desires of the children, the emotional and physical needs of the children, the emotional and physical danger to the children, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the children, the plans for the children by these individuals and by the Department, the stability of the home or proposed placement, the acts or omissions of the mother with respect to the children, and any excuse for the acts or omissions of the mother, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of each of the children. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. Because the evidence is both legally and factually sufficient to support the finding that termination of the mother's rights would be in the children's best interest, we overrule the mother's third issue.

We affirm the trial court's order of termination.


JIM R. WRIGHT
CHIEF JUSTICE


December 18, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7